UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                     :
UNITED STATES OF AMERICA,                                            :    18-cr-603 (ARR)
                                                                     :
    -against-                                                        :    NOT FOR PRINT OR
                                                                     :    ELECTRONIC
ABDI YUSUF HASSAN                                                    ::   PUBLICATION
                                                                     :
                    Defendant.                                       :    OPINION & ORDER
                                                                     :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

Abdi Yusuf Hassan has been charged in a superseding indictment with (1) conspiracy to provide material support for acts of terrorism, (2) provision and attempted provision of material support for acts of terrorism, (3) hostage-taking conspiracy, (4) hostage taking, (5) threatening a U.S. national with a weapon of mass destruction, (6) unlawful use of firearms, and (7) firearms conspiracy. Superseding Indictment, ECF No. 37. On August 5, 2019, Hassan brought several motions in limine, including motions to suppress his pre-arrest statements to Customs and Border Protection (CBP) and to suppress the fruits of search warrants for his Facebook and Google email accounts. These two motions are denied, for the reasons described below.

## BACKGROUND

Hassan is charged with participating in a conspiracy, involving co-defendant Mohamed Tahlil Mohamed, by which John Doe, a dual citizen of the U.S. and another country, was held hostage in Somalia for over two years. Hassan was arrested for his alleged participation in this conspiracy on February 5, 2019. Hassan Aff. ¶ 10, Ex. D to Def.'s Mem. of Law in Supp. of Mot. to Suppress ("Def.'s Br."), ECF No. 30.

1

### A. Pre-Arrest Statements to CBP

Prior to his arrest, Hassan was questioned three times by CBP upon reentry to the United States after traveling to Somalia. Hassan Aff. ¶¶ 3–4. These incidents occurred on January 20, 2015, September 15, 2015, and January 25, 2019. *See* Exs. A–C to Def.'s Br. Each time, Hassan was "detained by customs officials and questioned about [his] travels abroad and especially in Somalia." Hassan Aff. ¶ 3. He was approached by a customs official while in line for immigration before presenting his passport, and taken to a separate room. *Id.* ¶¶ 3–4.

In the room, Hassan was not permitted to leave and there was an officer guarding him. *Id.* ¶ 5. On one occasion, he asked to smoke a cigarette, and was initially refused, but then was taken outside by an officer. *Id.* His luggage was searched and paperwork was taken and copied. *Id.* His cell phone was also taken out of the room. *Id.* ¶ 6. Hassan reports that these occasions were "different" from previous times he had been questioned by CBP. *Id.* ¶ 7. Previously, the interviews "did not take much time at all" and he was "asked very simple questions[.]" *Id.*

CBP reports from the 2015 and 2019 interviews indicate that Hassan spoke about his activities in Somalia, including work with the Somali government and involvement in finding and freeing kidnapped persons from pirates and Al Shabab. *See* Exs. A–C to Def.'s Br.

Hassan has moved to suppress these statements because he did not receive *Miranda* warnings. *See* Def.'s Br. 12, 16.

### B. Search Warrant for Facebook and Google Email Accounts

On March 27, 2019, the Honorable Lois Bloom, Magistrate Judge for the Eastern District of New York, issued a search warrant authorizing law enforcement agents to search Hassan's Facebook account and two Google email accounts ("Google Account 1" and "Google Account 2"). *See* Affidavit in Support of an Application for a Search Warrant, ("Search Warrant Aff."),

2

Ex. J to Def.'s Br., ECF No. 30. The 23-page affidavit was written by FBI Special Agent Elisabeth Murtha. *Id.*

According to the affidavit, John Doe had identified a photograph of Hassan as a man present during his detention. *Id.* ¶ 6(d). Specifically, he "described Hassan as a senior figure among the guards who were detaining him, and as someone who described himself as affiliated with the local government in the Galmudug province of Somalia[.]" *Id.* (internal quotations omitted).

On February 15, 2019, Hassan was arrested in Minneapolis, Minnesota. *Id.* ¶ 9. Special Agent Murtha participated in the arrest and subsequent interviews of Hassan. *Id.* At that time, he was carrying a business card bearing his name, identifying him as Minister of Interior and Security for Galmudug State of Somalia, and providing an email address (Google Account 1) and phone number. *Id.* ¶ 9(a). During an interview with FBI agents, Hassan stated he did not know Mohamed or John Doe. *Id.* ¶ 9(b)–(c).

Special Agent Murtha identified Mr. Hassan's Facebook account as the profile picture matched her personal observations of him. *Id.* ¶ 7. The phone number on the account matched Hassan's phone number on his business card. *Id.* ¶ 10(a). The account was registered to an email address, Google Account 2. *Id.* ¶ 10(b).

Special Agent Murtha also reviewed the contents of the Facebook account of alleged co-conspirator and co-defendant, Mohamed Tahlil Mohamed. *Id.* ¶ 8. His account was searched pursuant to a search warrant signed by Magistrate Judge Ona T. Wang of the Southern District of New York on July 3, 2018. *Id.* The account contained messages from Tahlil to John Doe regarding his captivity in Somalia, including photographs of individuals involved in the conspiracy. *Id.* ¶ 8(a)–(c). *Id.* On March 25, 2015, Tahlil sent a Facebook "friend request" to

Hassan, who accepted. *Id.* ¶ 8(d). Tahlil and Hassan communicated on Facebook through seven Voice Over Internet Protocol calls and over 60 direct messages. *Id.* ¶ 8(e). Most of the messages between the two were in Somali. *Id.* ¶ 8(f). There was one post partly in English, where Hassan responded, "Congratulations my bro this is amazing good jobs," to a post by Tahlil of himself in a military uniform. *Id.* In several messages, Tahlil referred to Hassan with the Somali word "wasiir," which translates to "minister." *Id.* ¶ 8(g).

The affidavit goes on to explain, that based on Special Agent Murtha's experience, it is likely that all three accounts will contain communications and other materials relevant to the charged crimes. *Id.* ¶¶ 10–14.

Hassan has moved to suppress the fruits of this search warrant, arguing that the above facts do not amount to probable cause. *See* Def.'s Br. 20–26.

## DISCUSSION

### A. <u>Pre-Arrest Statements to CBP</u>

*Miranda* warnings are required "whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). A person is in custody if "'a reasonable person in defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest.'" *United States v. Newton*, 369 F.3d 659, 673 (2d Cir. 2004) (quoting *United States v. Ali*, 68 F.3d 1468, 1472 (2d Cir. 1995)). "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 157, 165 (2d Cir. 2008).

As the Second Circuit explained in *United States v. FNU LNU*, 653 F.3d 144, 153–54 (2d Cir. 2011), a reasonable person arriving at the United States border is unlikely to think she is under arrest when subjected to routine border questioning because:

> In the context of arriving at an American airport, (a) in which compulsory questioning—with no freedom to enter the United States and with nowhere else to go—inheres in the situation and (b) in which the traveler has voluntarily submitted to some degree of confinement and restraint by approaching the border, a reasonable traveler will expect some constraints as well as questions and follow-up about his or her citizenship, authorization to enter the country, destination, baggage, and so on.

*Id.* at 153–54. In that case, the defendant had been isolated and questioned by CBP officers regarding her identity for 90 minutes. *Id.* at 147. The Second Circuit concluded that the defendant was not subject to custodial interrogation, and no *Miranda* warnings were required. *Id.* at 155.

In several similar cases in this circuit, courts have concluded that a person isolated and subjected to CBP questioning at the border was not in custody for *Miranda* purposes. *See, e.g.*, *United States v. Yilmaz*, 508 F. App'x 49, 52 (2d Cir. 2013) (unpublished decision) (no *Miranda* warnings required 90-minute second inspection at vehicular border crossing); *United States v. Wilson*, 100 F. Supp. 3d 268, 280–81 (E.D.N.Y. 2015) (no *Miranda* warnings required where defendant at the airport was escorted to private room and subject to a physical pat-down before being arrested for drug smuggling); *United States v. Tavares*, No. 11–CR–610 (NGG), 2012 WL 194974, at *2 (E.D.N.Y. Jan. 23, 2012) (no *Miranda* warnings required where CBP agents took defendant to a separate inspection area and questioned him about his passport).

In the rare cases where a court has suppressed a defendant's statements to CBP, it was because CBP's conduct went beyond a typical border inspection that an international traveler would expect. *See United States v. Morla*, 123 F. Supp. 3d 382, 384 (E.D.N.Y. 2015) (defendant was handcuffed to a bench); *United States v. Carr*, 63 F. Supp. 3d 226, 236 (E.D.N.Y. 2014)

(defendant escorted to pat-down room by four armed officers and repeatedly questioned about drug smuggling).

Here, Hassan's affidavit "asserts facts that, taken as true, show nothing more than the conditions typical of a modern border inspection." *See United States v. Tavares*, 2012 WL 194974, at *2. Hassan states that CBP officers took him a separate room, questioned him about his travels, searched his luggage, copied his paperwork, took his cell phone, and would not allow him to be alone. These are all routine restraints at a border crossing, and would not make a reasonable person feel that he was under arrest. Hassan's affidavit is devoid of any allegations about the substance of CBP questioning, which can be an important factor in determining whether a person was in custody. *See FNU LNU*, 653 F.3d at 153 (emphasizing that "especially…in border situations, the nature of the questions asked" is an important factor in determining whether a person is in custody for *Miranda* purposes). Defendant's brief states that Hassan "was questioned about his activities in Somalia and specifically with regard to hostage taking and piracy in Somalia," but Hassan's affidavit does not support this allegation. Def.'s Br. at 16; *see also* Hassan Aff. ¶ 3 (stating only that he was "questioned about [his] travels abroad and especially in Somalia."). The reports attached to defendant's brief do indicate that Hassan spoke about his activities with the Somali government, including involvement in freeing kidnapped persons, but they never indicate that the officers asked him accusatory questions on these topics, or otherwise acted in a manner that a reasonable person would understand to be a constraint comparable to arrest. *See* Exs. A–C to Def.'s Br. The reports are consistent with Hassan voluntarily providing this information. *See id.* Absent any contrary evidence suggesting that Hassan was subject to any restraints or questioning unusual for a border interview, there is no basis to suppress his statements.

Defendant also raises that he may have been "flagged as a suspect to immigration authorities." Def.'s Br. at 17. But the possibility that the questioning may have been coordinated with the FBI does not change the analysis. *Stansbury v. California*, 511 U.S. 318, 323 (1994) ("[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.") Unless the officers objectively acted in a way that would make a person think that he was under arrest, there is no custody for *Miranda* purposes. Hassan's affidavit does not indicate any such conduct on the part of CBP officers, so even if they were acting in concert with the FBI, that fact would not be relevant to this analysis.

There is no need for an evidentiary hearing because Hassan's affidavit, "even if assumed to be true, would not require suppression[.]" *United States v. Getto*, 729 F.3d 221, 226 n.6 (2d Cir. 2013). Therefore, Hassan's motion to suppress his pre-arrest statements to border officials is denied.

### B. Search Warrant for Facebook and Google Email Accounts

The Fourth Amendment prohibits the issuance of warrants "but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "The Supreme Court has explained that 'probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). In determining whether probable cause supports issuance of a warrant, the magistrate must "make a practical, common-sense decision" that there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Gates*, 462 U.S. at 238). A reviewing court must accord "substantial deference" to a magistrate judge's finding that

probable cause exists, and the review is "limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (quoting *Gates* 462 U.S. at 236).

Here, Magistrate Judge Bloom had a substantial basis for finding probable cause to search Hassan's accounts. The facts described in the affidavit, summarized above in the background section, are sufficient to conclude a fair probability that evidence related to the charged offenses would be found in these accounts.

Defendant argues, "At best the affidavit establishes that in 2014, long after Tahlil left John Doe and his captors, he and Hassan established contact, that Hassan congratulated Tahlil for something and that Tahlil referred to Hassan as 'minister.'" Def.'s Br. at 24. This statement ignores relevant context that Hassan had been identified by John Doe and had been arrested and indicted for participation in a conspiracy with Tahlil to hold John Doe hostage. Furthermore, Tahlil was communicating with the victim via Facebook regarding the kidnapping. In this context, the communications between Hassan and Tahlil on Facebook provide a substantial basis for finding probable cause.

Similarly, there is a substantial basis in the affidavit for finding probable cause to search both Google email accounts. The first email account was listed on Hassan's business card, which also stated his title as a government minister. John Doe stated that he knew Hassan to be affiliated with the local government during the kidnapping. The second Google account is registered with Hassan's Facebook account, and Agent Murtha explains that in her experience, that means the email account may have additional information relevant to the Facebook account.

Special Agent Murtha applied her experience and training to conclude that all three accounts were likely to contain relevant evidence. Magistrate Bloom had a substantial basis for

finding probable cause. Therefore, Hassan's motion to suppress the fruits of the searches of these accounts is denied.

## CONCLUSION

For the foregoing reasons, Hassan's motions to suppress his pre-arrest statements and the fruits of searches of his Facebook and Google accounts are denied.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:      November 1, 2019
            Brooklyn, New York