UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                   :

UNITED STATES OF AMERICA,              :       18-CR-603 (ARR)
                                                                  :
                                                                   :       <u>NOT FOR ELECTRONIC</u>
           -against-                                  :       <u>OR PRINT PUBLICATION</u>
                                                                   :
ABDI YUSUF HASSAN,                           :
                                                                   :       **OPINION & ORDER**
                       *Defendant*.                          :
                                                                   :
------------------------------------------------------------------- X

ROSS, United States District Judge:

      Defendant, Abdi Yusuf Hassan, has moved for reconsideration of my previous bond denial or in the alternative for temporary release in advance of pre-trial proceedings. Def.'s Mot. 2–8, ECF No. 99. The government opposes. Gov't's Opp'n 8–19, ECF No. 100. For the following reasons, I deny both requests.

## BACKGROUND

      Defendant faces charges of (1) providing material support for acts of terrorism, in violation of 18 U.S.C. § 2339A; (2) conspiring to provide material support for acts of terrorism, in violation of 18 U.S.C. § 2339A; (3) hostage-taking and aiding and abetting hostage-taking, in violation of 18 U.S.C. §§ 1203 and 2; (4) hostage-taking conspiracy, in violation of 18 U.S.C. § 1203; (5) threatening to use a weapon of mass destruction against a U.S. national, and aiding and abetting the same, in violation of 18 U.S.C. §§ 2332a and 2; (6) conspiracy to possess a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(o); and (7) possession of a firearm in furtherance of a crime of violence, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c) and 2. Superseding Indictment, ECF No. 37. These charges stem from the

1

kidnapping of a U.S. citizen victim in Somalia. Gov't's Opp'n 3–4.

Defendant first received a bail hearing before a federal district court in Minnesota on February 21, 2019. Bond Order 8, ECF No. 9. The court denied release, finding there was clear and convincing evidence that no conditions or combination of conditions of release would reasonably assure Mr. Hassan's appearance in court or the safety of the community. *Id.* at 9. Regarding flight risk, the court considered that Mr. Hassan possessed multiple passports, had substantial family and government contacts in Somalia, and faced possible life imprisonment. *Id.* at 9–10. Regarding danger, the court considered the severity of the allegations in the complaint. *Id.* at 10.

Defendant received a second bail hearing before me on August 14, 2019, and I denied bail, as well. *See* Aug. 2014 Bail Tr., Gov't's Opp'n Ex. A, ECF No. 100-1. Noting that the charged weapons and terrorism offenses established a presumption of flight risk and danger, I found that the government had "amply met both its burden of proving that defendant is a flight risk and a danger to the community, and that there are no conditions or combination of conditions that could reasonably ensure either the defendant's presence at trial or the safety of the community." *Id.* at 13:18–22. Regarding flight risk, I credited the seriousness of the charged offenses, four of which carry potential life sentences and one of which carries a thirty-year mandatory minimum. *Id.* at 14:1–9. I also considered the weight of the evidence, finding that the government's proffer, which included projected witness testimony, physical evidence, and social media posts, outweighed defendant's concerns that the victim's identification of him—the "sole identification" known at the time—was unreliable. *Id.* at 14:12–15:24. I then noted defendant's significant foreign ties to family members abroad and the Government of Somalia, where he served as a minister of interior and security in the province in which the victim was held captive. *Id.* at 16:1–16. Based on the

same evidence, I found that Mr. Hassan posed "a danger to the global community" and rejected defendant's proffered bail package. *Id.* at 16:21–17:7.

Since then, defendant has remained detained at the Metropolitan Detention Center ("MDC") in Brooklyn pending trial. Def.'s Mot. 4. In discovery, defendant learned that in 2014, the victim failed to identify Mr. Hassan in a photo array. *Id.* at 2; Gov't's Opp'n 1. This failed identification occurred five years before the victim positively identified Mr. Hassan in a photo array in 2019—the identification defendant challenged in his original bail hearing. Def.'s Mot. 3.

Additionally, the parties have been preparing for Rule 15 depositions to take place in Somalia, potentially in the next few months. *Id.* at 4. Due to the COVID-19 pandemic, defendant submits that he can only communicate with counsel through fifteen-minute phone calls and limited legal video calls. *Id.* Given these restrictions, defense counsel claims he has been unable to review 3500 materials with defendant. *Id.* The government notes that legal calls are supposed to last for thirty minutes, and counsel may request longer time periods. Gov't's Opp'n 14 n.3. Moreover, in-person legal visits resumed at the MDC on February 16, 2021. *Id.* at 14.

Nevertheless, the COVID-19 pandemic continues to affect people incarcerated at the MDC. As of March 3, 2021, the Bureau of Prisons ("BOP") reports seven active cases among inmates and seventeen among staff. *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus (last updated Mar. 3, 2021) ("BOP COVID Cases"). Mr. Hassan is fifty-three years old and suffers from "elevated blood pressure." Def.'s Mot. 8; Medical Records, Def.'s Mot. Ex. E (filed under seal). The Centers for Disease Control and Prevention ("CDC") have classified "high blood pressure" as a comorbidity that "might" increase a person's risk for severe illness from COVID-19. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 22, 2021) ("CDC

Guidelines"). The CDC also has noted that "people in their 50s are at higher risk for severe illness than people in their 40s," but "[t]he greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Feb. 26, 2021) ("CDC Older Adults"). Mr. Hassan, however, received the first dose of the Pfizer vaccine on January 22, 2021 and was set to receive the second dose around the end of February. Gov't's Opp'n 2.

## LEGAL STANDARD

I must order pre-trial detention if I find that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Four factors inform this determination: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including, among other things, the defendant's character, ties to the community, past conduct, and financial resources; and (4) whether the defendant poses a danger to the community if released. *Id.* § 3142(g). Where, as here, a defendant faces charges under 18 U.S.C. § 924(c) or a terrorism statute listed in 18 U.S.C. § 2332b(g)(5)(B) that carries a maximum sentence of 10 years or more, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. *Id.* §§ 3142(e)(3)(A), (C).

"Where there is such a presumption, the defendant 'bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight.'" *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). "Satisfying the burden of production does not eliminate the presumption favoring detention; it

'remains a factor to be considered among those weighed by the district court.'" *Id.* (quoting *Mercedes*, 254 F.3d at 436). "At all times, however, 'the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community,' and 'by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight.'" *Id.* (quoting *Mercedes*, 254 F.3d at 436).

Even if a defendant has been ordered detained prior to trial, a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of the United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

## DISCUSSION

### I. Bond Is Not Warranted.

Defendant claims that the evidence showing the victim once failed to identify Mr. Hassan in a photo array in 2014 so undermines the government's case against him that it warrants his release. Def.'s Mot. 2–3. The government submits, however, that this evidence is outweighed by the victim's identification of Mr. Hassan in 2019 and the significant corroborating evidence for that identification, including witness testimony, physical evidence, and social media evidence. Gov't's Opp'n 9–11.

I agree with the government that defendant's new evidence does not tip the weight of the evidence in favor of release. Defendant had raised concerns about the 2019 identification in his original bail hearing, and I had credited the government's proffer that it would produce evidence at trial of defendant's close coordination with coconspirators through witness testimony, physical evidence, and social media evidence. Sentencing Tr. 14:12–15:24. Since then, the government has

shared further details about this evidence, including the expected testimony of the victim and a confidential source who will testify that hostage takers used Mr. Hassan's house for meetings and to store weapons. Gov't's Opp'n 9–10. The government also plans to introduce "(i) recordings of proof-of-life communications that [the victim] identified as directed in part by the defendant; (ii) records showing the defendant travelling outside the United States consistent with the time period of his interactions with [the victim]; and (iii) social media evidence demonstrating the defendant's online contacts with several co-conspirators . . . ." *Id.* at 10. While defendant's new evidence amplifies concerns over the victim's identification of Mr. Hassan, the government's new evidence, at the very least, counterbalances those concerns. Thus, the weight of the evidence remains the same as it was when I denied Mr. Hassan's initial bail request.

Even if I found the weight of the evidence favored defendant, the seriousness of the charged offenses and the nature of his foreign ties would outweigh that factor. As I noted in my previous bond determination, Mr. Hassan faces potential life imprisonment for kidnapping and hostage-taking and a thirty-year mandatory minimum sentence for firearms offenses. Sentencing Tr. 14:1–9. He also has extensive ties in his native Somalia, where he served as a minister of interior and security in the province in which the victim was held captive. *Id.* at 16:1–16. Given these facts, defendant's misidentification evidence cannot overcome the presumption attached to the charged offenses that no combination of conditions could reasonably assure Mr. Hassan's presence in court or the safety of the community.

## II.   Temporary Release Is Not Warranted.

Mr. Hassan argues that he is entitled to temporary release because COVID-19 restrictions at the MDC have prevented him from reviewing 3500 materials with counsel in anticipation of Rule 15 depositions in Somalia, which he claims will take place within the next couple of months. Def.'s Mot. 3–7. The government notes, however, that in-person legal visits at the MDC resumed

6

on February 16, 2021. Gov't's Opp'n 14. It also offered to discuss exempting certain materials from the protective order to facilitate deposition preparation if in-person legal visits are suspended again. *Id.* at 15. I recognize that the inability to meaningfully consult with legal counsel in preparing for trial can be a "compelling reason" warranting temporary release under 18 U.S.C. § 3142(i). *See United States v. Chandler*, No. 19-CR-867 (PAC), 2020 WL 1528120, at *2 (S.D.N.Y. Mar. 31, 2020) (collecting cases). However, given the government's representations, I see no need to release Mr. Hassan temporarily to review 3500 materials. The parties appear to be capable of solving access issues among themselves and in consultation with the MDC.

**III.     The COVID-19 Pandemic Does Not Justify Indefinite or Temporary Release.**

Lastly, Mr. Hassan argues that the COVID-19 pandemic compels his release, either indefinitely or temporarily, because he is fifty-three years old and suffers from elevated blood pressure, both of which may increase his risk of serious illness from contracting the virus. Def.'s Mot. 7–8. The government submits, however, that Mr. Hassan received the first round of the Pfizer vaccine in late January and was scheduled to receive the second round of the vaccine shortly thereafter. Gov't's Opp'n 2. While I do not underestimate the toll the pandemic has taken on incarcerated people or the recent uptick in infections at the MDC, Mr. Hassan's age and medical condition do not outweigh the danger and flight risk considerations I already have discussed. *See, e.g.*, *United States v. Estevez*, No. 18-CR-669 (JPO), 2020 WL 1911207, at *1 (S.D.N.Y. Apr. 20, 2020) (balancing risk posed by defendant's high blood pressure and the COVID-19 pandemic against defendant's risk of danger to the community). Even if they did, Mr. Hassan should gain effective immunity from the virus within the next few weeks, having received a full round of the Pfizer vaccine. *See* Noah Weiland & Carl Zimmer, *Pfizer's Vaccine Offers Strong Protection After First Dose*, The New York Times (Dec. 8, 2020) (updated Feb. 26, 2021),

7

http://www.nytimes.com/2020/12/08/health/covid-vaccine-pfizer.html (citing announcement stating Pfizer vaccine "had an efficacy rate of 95 percent after two doses administered three weeks apart"). Thus, Mr. Hassan is not entitled to release on this basis.

## CONCLUSION

For the foregoing reasons, I deny defendant's motion to reconsider my previous bond determination or in the alternative order Mr. Hassan's temporary release.

SO ORDERED.

                                              /s/
                                           Allyne R. Ross
                                           United States District Judge

Dated:        March 4, 2021
               Brooklyn, New York